Farrall and others vs. Shea.

Farrall and others, Respondents, vs. Shea, Appellant.

*September 22 — Cctober 12, 1886.*

*Survival of actions: Ejectment.*

| 66 | 561 |
|---|---|
| 76 | 661 |
| 66 | 561 |
| 95 | 326 |
| 66 | 561 |
| f102 | 380 |

1. Under our statutes, as at common law, an action of ejectment abates upon the death of the sole defendant.
2. Per ORTON, J.  *It seems* that the claim for mesne profits and the counter claim for the value of improvements are in this state mere incidents of the action of ejectment, and that upon the death of the defendant the action cannot be revived even for the purpose of adjusting those claims.

APPEAL from the Circuit Court for *Waukesha* County. The case is stated in the opinion.

For the appellant there were briefs signed by *Jenkins, Winkler & Smith* and *Jenkins, Winkler, Fish & Smith,* and the cause was argued orally by *C. H. Van Alstine.* They argued, among other things, that the cause of action in ejectment is purely and simply one of tort *(Howland v. Needham,* 10 Wis. 497), and at common law did not survive the death of the defendant as against his heirs or grantees. *Putnam v. Van Buren,* 7 How. Pr. 31; *Mosely v. Mosely,* 11 Abb. Pr. 105; *Hopkins v. Adams,* 5 id. 351, 357; *Webbers' Ex'rs v. Underhill,* 19 Wend. 447; *Moseley v. A. N. R. Co.* 14 How. Pr. 71. Nor does it survive under our statutes. As to secs. 2806, 2808, R. S., see *Alley v. Hubbard,* 19 Pick. 243; *People ex rel. Hoffman v. Judge St. Clair Co.* 40 Mich. 351–2. As to sec. 2801, see *Livermore v. Bainbridge,* 49 N. Y. 128; *Webber v. Quaw,* 46 Wis. 118; *Sup'rs La Pointe v. O'Malley,* 47 id. 332, 339. As to sec. 3252, see *Barribeau v. Brant,* 17 How. 43.

For the respondents there was a brief by *Markham & Noyes,* and oral argument by *Mr. Noyes.* They contended, *inter alia,* that the issues in the action were (1) the right to recover possession, (2) the value of the mesne profits, and (3) the value of defendant's improvements and the taxes paid.

Farrall and others vs. Shea.

Upon the third issue Mathew Shea was plaintiff and Bridget Halpin defendant. R. S. 1858, ch. 141, sec. 31; R. S. sec. 3097. The issues thus joined were such that the plaintiff would not have the right to discontinue as against the defendant. *Bertschy v. McLeod*, 32 Wis. 205; *McLeod v. Bertschy*, 34 id. 244. The defendant became an actor in the suit, and, as to some of the issues, the plaintiff. *Davis v. Louk*, 30 Wis. 308–312; *Pacquette v. Pickness*, 19 id. 219; *Scott v. Reese*, 38 id. 636; *Phœnix L. M. & S. Co. v. Sydnor*, 39 id. 600. The cause of action upon these issues survived upon his death, and under the statute could be revived against his representatives or successors in interest. R. S. secs. 2800, 2803, 2810, 3252; *Livermore v. Bainbridge*, 49 N. Y. 125; *Roberts v. Marsen*, 23 Hun, 488; 5 Abb. Pr. 356. Including, as it does, the issues as to mesne profits and improvements, the action is not "purely one of tort," and sec. 4253, R. S., provides for its survival. See *Hegerich v. Keddie*, 99 N. Y. 258. The statutes of Massachusetts, Michigan, and New York are so different from our own that the cases cited by the appellant are inapplicable. But even under the present statutes in New York and Michigan it has been held that a claim for mesne profits is, in substance, in *assumpsit* for use and occupation. *Woodhull v. Rosenthal*, 61 N. Y. 394; *Noble v. Fairs*, 58 Mich. 637. The claim for mesne profits is therefore such a debt as would render the heirs of a deceased person liable under sec. 3274, R. S. That the action does not absolutely abate upon the death of the defendant, is apparent also from secs. 3089–3091, R. S., which permit his heirs, devisees, or assigns, within a certain time, to apply for and have a new trial in the action.

ORTON, J. An action in ejectment was pending, wherein Bridget Halpin was plaintiff, and Mathew Shea defendant. Judgment was rendered therein in favor of the plaintiff, December 30, 1870. Within one year from that time a new

trial was granted therein, and the costs paid. The action remained pending until the defendant therein, Mathew Shea, died, about the 17th day of December, 1884, leaving as his heirs at law his widow, *Catherine Shea*, and daughter, Ellen Shea. Bridget Halpin, the plaintiff, died the 14th day of September, 1870, leaving as her heirs at law the said *Catherine Farrall, Eliza Halpin*, and *Julia Halpin*. The order appealed from admitted said *Catherine Farrall, Eliza Halpin*, and *Julia Halpin* to prosecute said action, and re-vived it against said *Catherine Shea* and Ellen Shea, the heirs at law of said Mathew Shea, deceased. The motion was resisted by them on the ground that the action abated on the death of Mathew Shea, and does not survive and cannot be revived against them as his heirs, and the same ground is relied upon for the reversal of said order. It is true, the arguments of counsel have taken a much wider range than this. For the respondents it is claimed (1) that, it appearing by the answer of *Catherine Shea* that she be-came a purchaser of the land before the death of her hus-band, Mathew Shea, she was a proper or necessary party to said suit; and (2) that as there is a claim of mesne profits by the plaintiff, and a claim for taxes paid and the value of improvements made by the defendant, the action did not abate in respect to these two claims.

As to the first claim, the action, if it abated at all, did so before *Catherine Shea* was made a party thereto, and after that there was no action pending to which she could be made a party, and the motion was not to continue the ac-tion against her as purchaser; and, as to the second, the action itself was revived by the order, and it was not re-vived merely for the purpose of adjudicating the claims of the plaintiff for mesne profits, and of the defendant for taxes paid and improvements made. The order, if it have any effect, continues the action of *ejectment* generally, and that action is now pending for trial, for the recovery of the

possession of the land. It is to reverse the order having such effect, if any, that this appeal is brought. Whether these two claims could be separated from the action of ejectment, and be revived against the heirs, and stand for trial as a separate issue, according to the authorities cited, is quite immaterial, for such is not the order appealed from. Whatever may be the statute and practice in other states, these counterclaims for mesne profits, and for the value of improvements as an offset thereto, by our statute would seem to be incident only to the main action of ejectment; and, if that action is discontinued, such claims fall, so far as that action is concerned. But this is only an intimation of my own, as it is not in the present case on appeal from the order reviving the main action of ejectment. I do not understand that the learned counsel of the respondents contend that the action of ejectment, as such, survives. As we view the question as to whether the action survives against the heirs of the deceased defendant, it will not be necessary to pass upon the other question so ably and fully discussed, whether it ought to be continued in the names of the heirs of the deceased plaintiff. We are clearly of the opinion that the action does not survive against the heirs of a deceased defendant in this state. At common law, all concede the action abated and could not be revived against the heir or personal representative of a deceased defendant in ejectment. In view of their own statutes the courts of New York hold that the action does not so survive, but abates upon the death of the defendant. The common law in this respect seems to be based upon good reason. It is not to be presumed that the premises in controversy pass at once into the actual possession of his heirs on the death of the defendant. The plaintiff may at once enter into their peaceable possession, without suit, for aught that appears on this motion. They have been guilty of no withholding of it from the plaintiff, which by our own decisions would

be a *wrong* if they had. *Howland v. Needham*, 10 Wis. 497.

But we need not furnish reasons for the common law which abated this action upon the death of the defendant, for it needs no vindication. The only question here is, Has our statute amended and changed the common law in this respect? It has clearly enlarged the number of actions which survive, and presumably mentions all intended to be revived which did not survive at common law. Our statute on this precise subject (sec. 4253, R. S.) is very strict and clear, leaving nothing to intendment beyond what is expressed in it. It is: " In addition to the actions which survive at common law, the following shall also survive, that is to say: actions for the recovery of personal property, or the unlawful conversion thereof, actions for assault and battery, or false imprisonment, or for goods taken and carried away, and actions for damages done to real or personal estate." This is very explicit. When the legislature provided that actions for the recovery of *personal* property should survive, it would have been easy and highly proper to have added " or *real* property," so as to read " for the recovery of personal *or real* property." *Expressio unius est exclusio alterius.* They must have intentionally omitted *real* property. Our statute classes actions of ejectment under the designation of " actions for the recovery of specific real property." Sec. 3073, R. S. That would have been the natural and proper language to have been inserted, if intended.

There is no other statute which can be tortured into any such amendment of the common law. Sec. 2806, R. S., provides for the continuance of the action in the name of the heir, executor, or administrator of a deceased plaintiff. Why omit a similar provision in respect to the deceased defendant? Sec. 2808 provides that when the action is against *several* defendants, and one of them die, the action may be prosecuted against the *survivors*. Why not revive

against the heir of the deceased defendant, and go on without such a provision?

In all the statutes cited which are claimed to imply such a radical amendment of the common law, it would have been most natural and proper to have supplied this clear and obvious omission if intended. What was intended seems to have been in all cases most explicitly expressed, so that, by the familiar rule, other material provisions and all other cases not mentioned are excluded. "It is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required. The law rather infers that the act did *not* intend to make any alteration other than what is specified and *besides* what has been plainly pronounced." Dwar. Stats. 185, note 7. "The same rule of interpretation is adopted by our courts, federal and state;" citing cases. In the same note the American publisher quotes the language of Chancellor KENT, of most vehement and exalted eulogy upon the common law as the perfection of reason, and gives emphatic sanction to this rule of construction.

There can be no question but that the action of ejectment, which still remains substantially as in the past except as to its fictions, also remains as at common law in this respect, and abates on the death of the defendant, and cannot be revived. If the legislature wishes to class this action among those which survive on the death of the defendant, they can easily express such intent in explicit language, and until they do so we prefer to abide by the common law, rather than to *spell* out such an amendment by loose and most unreasonable statutory construction.

That part of the order which admits the heirs of Bridget Halpin, deceased, to prosecute the action, will necessarily fall, because there was no action pending to be prosecuted.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded with directions to that court to deny the motion.