Campbell, Chief Justice,
delivered the opinion of the court:
■ This case in its general aspects is like that of Swift de Co., 59 C. Cls. 364, 270 U. S. 124. That is to say, the legal principles governing the cases are the same. The facts are not materially in dispute. A corporation known as L. Frank & Son Company was called upon to furnish large quantities of “ corned-beef hash ” during the months of January, February, and March, 1919, for Army uses. The officer in charge of the packing-house products branch, subsistence division, Quartermaster General’s office, being the director of purchase and storage, Brigadier General Kniskem on November 26,1918, issued a requisition upon the United States Food Administration to make allotments for delivery by L. Frank & Son Company of 580,000 pounds of corned-beef hash in January; 660,000 pounds in February; and 750,000 pounds in March. As part of the same requisition there were included the names of seventeen other packers, with stated amounts of different products for each of the three months. Upon receipt of this requisition the United States Food Administration, meat division, addressed to L. Frank & Son Co. on December. 3, 1918, its notice that on requisition of the packing-house products branch that company had been allotted for delivery during the three months above mentioned the quantity of corned-beef hash already stated, with the statement “Price to be determined later.” This allotment was made by duly constituted agents of the Government and was accepted in writing by the company. In compliance with the allotment and its acceptance, the company actually delivered ,the quantities called for. January and February deliveries. It was making preparations' to carry out the bal- *389 anee of the contract by making deliveries in March when, on January 27, it received a communication from the office of Brigadier General Kniskern to the effect that the Government would not accept the products mentioned for March delivery, the reason assigned for this action being the demobilization of the Army then in process and the constantly decreasing demand for the meat products. The L. Frank & Son Company had made purchases of meat which it had on hand for use in supplying the March allotment, and on account of the falling prices occasioned by the Government’s refusal to accept meat products the market value of these purchases was greatly lessened. It did all it could reasonably be expected to do to reduce its damages and finally sold at considerable loss the meat it had on hand. Its books were examined by Government accountants and its losses ascertained. One small item allowed by the accountant is rejected but the balance shown in the findings as the net amount of loss accords with the conclusions of these accountants. Under the principles stated in the Swift & Co. case, supra, there can be no question of the Government’s liability for the damages resulting from its breach of the contract.
On behalf of the Government it is insisted, however, that the L. Frank & Son Company, a Wisconsin corporation, was dissolved by resolution of its stockholders, set forth in the findings of fact, that the Wisconsin statutes authorize a voluntary dissolution, and provide that when lawfully dissolved the' corporation shall nevertheless continue for a period of three years to be a body corporate “ for the purpose of prosecuting or defending actions and of enabling them to settle and close up their business, dispose of and convey their property and divide their capital stock,” and that after the expiration of the three-year period the corporation becomes defunct, or, to use the language of defendant’s brief, “ it has no capacity to prosecute an action.” For this reason the Government insists the petition should be dismissed, and to sustain this view there is cited State, ex rel. Pabst, v. Circuit Court, 184 Wis. 301. This case quotes the sections of the statutes relied upon and decides that the writ of prohibition should issue, restraining the further prosecution of an action against the Pabst Company because of *390 tbe dissolution of the latter by action of its stockholders in conformity with the provisions of the statutes. The period of three years having expired it was said: “ The corporation being defunct and without legal existence, all actions against it abated ” (p. 307).
It is to be noted that the action pending against the Pabst Company was an action ex delicto which would not have survived, at common law, the dissolution of the corporation, but whether the rule stated is the same or is different where the suit is by the corporation brought within the three years allowed by the statute, it is plainly necessary in order to invoke the statute that it be proved that a legal dissolution has taken place. Under the terms of the statute it is not only essential to show that the stockholders have taken appropriate action, but it is also essential that the formal proceedings required by the statute be complied with. There is no proof in the instant case that the resolution properly attested, as required by section 181.03 Stats. (Pabst case, p. 305), was filed with the Secretary of State or was accepted by him, or was recorded by the register of deeds. But the resolution alone is not sufficient proof. (Pabst case, p. 306.) But if it be assumed that the corporation was dissolved legally, it does not follow that the present action may not be maintained, because of the intervention of the person designated by the resolution of the stockholders. The action in this court was instituted within three years of the date of the resolutions looking to the .corporation’s dissolution. It was brought in the corporation’s name. The statute authorizes a suit within three years. A contention was made in Lmde-rnann v. Rush, 125 Wis. 210, 229, that the power extended by the statute for three years was to enable the corporation to wind up its affairs, was exclusive of any other right or remedy for that purpose, and that debts due it or owing by it were extinguished at the end of that period. The court said (p. 230) “ If these propositions are well founded, the legal consequences are certainly weighty and far-reaching, and there should be no uncertainty in their application for the ascertainment of private property rights and of those of the state within their operation.” It brushed aside the idea that all rights of action ended at the end of the three-year period *391 and held that the assets of the dissolved corporation are a trust fund which a court of equity would lay hold of and administer for the benefit of those entitled to it. This is in keeping with the generally accepted doctrine on the subject. See Pabst case, supra; Lake Shore Railroad Co. v. Smith, 173 U. S. 684, 698; Meriwether v. Garrett, 102 U. S. 472, 512; Pewabic Min. Co. v. Mason, 145 U. S. 349. It appears that in Lindemann v. Rusk, supra, the action was commenced within three years immediately following the date of dissolution of the corporation, “ but was not prosecuted to final judgment until after this three-year period,” and replying to a contention that the action abated at the expiration of the three-year period, the court says (p. 232) : “No reason is advanced for this result except the suggestion above mentioned, that the corporation then became extinct and all. interest in the claim to its property was forfeited, and that creditors and owners of the capital stock were remediless in the matter; but, as we have pointed out, such is not the result; nor is there anything in the nature of the suit to prevent its continuance and an adjudication and enforcement of these rights. The action is founded in equity.” It would indeed be a strange doctrine that would enable the Government to defeat a meritorious claim by the mere postponement of trial of a suit legally brought within the three-year period. The appropriate method of asserting the right of those entitled to the fund would usually be through a receiver appointed by the court, and the question is whether there are proper parties before the court. If there are such there is no doubt that the suit may be properly prosecuted to judgment. The Wisconsin statute authorizes the directors to act for three years, with full power to settle the corporation’s affairs but “subject to the power of any court of competent jurisdiction to make in any case a different provision.” See Lindemann v. Rusk, supra, p. 231. Clearly, the right of action did not abate if there was a proper plaintiff before this court within the period prescribed by the statute of limitations applicable to this court. The resolution of the stockholders was not confined to a dissolution of the corporation but went further and declared “that the assets of the cor *392 poration be turned over*to E. M. Oberndorfer, liquidator, with directions to pay the debts and liabilities” and distribute the balance to those entitled to share therein. This action superseded the authority of the directors in that the stockholders themselves directed that the assets be turned over to the liquidator. That the claim against the Government was a part of the assets is unquestionable. The resolution is broad enough to constitute the liquidator an assignee for the benefit of creditors. It gave him, whether called liquidator, trustee, or assignee, the power and right to collect the claim of the corporation against the Government, and to that end he could maintain a suit. See Hubbard, v. Tod, 171 U. S. 474, 498. If the corporation were dissolved it could sue or its name be used in the suit brought within the three-year period, and while the suit was still undisposed of the liquidator sought permission to continue the suit. He was accorded that right, but without prejudice to legal objections the defendant might present. The objections now urged are as heretofore stated. While this court can not appoint a receiver, it is quite clear that a court of equity would not allow the trust to fail for want of a trustee. See Curran v. Arkansas, 15 How. 304, 311. It seems unnecessary to remand the case for that purpose where it appears that the stockholders have designated a liquidator (whom we regard as an assignee) and thus allowing the case to proceed in his name no reason appears why this court may not so mould its judgment as to show that he sues for the use of the creditors and stockholders of the corporation. Judgment will be awarded accordingly. And it is so ordered.
Moss, Judge; Graham, Judge; and Booth, Judge, concur.
This case was originally decided January 9,1928, and concluded with Finding XIY. On defendant’s motion for new trial Finding XV was, by order of April 16, 1928, added as follows, with memorandum by Chief Justice Campbell:
XY. (a) The original petition in this case was filed December 16, 1921, in the name of L. Frank & Son Company, alleging a contract made in November, 1918. It was No. A-333 on the docket, and is made a part of this finding by reference.
*393 (b) An amended petition was filed on February 6, 1922, in the name of L. Frank & Son Company, a corporation, which is made a part of thjs finding by reference. The defendant’s motion filed March 30, 1922, to require that the petition be made more definite was overruled. The defendant’s demurrer filed May 29,1922, was overruled June 5,1922.
(c) A second amended petition was filed October 18,1922, in the name of L. Frank & Son Company, a corporation, which is made a part of this finding by reference. The defendant’s demurrer to the same was overruled February 19, 1923.
(d) A third amended petition was filed in the name of L. Frank & Son Company, a corporation, on May 8,1926, which ,is made a part of this finding by reference. After proof had been taken and filed defendant’s motion for leave to file special plea in abatement was overruled.
(e) On December 18, 1926, a motion was filed asking the substitution of E. M. Oberndorfer as party plaintiff, which was objected to by defendant, and subsequently allowed. On March 5, 1927, a fourth amended petition was filed in the caption of which E. M. Oberndorfer appeared as party plaintiff. This petition is made a part of this finding by reference. The defendant’s demurrer to this petition was overruled.
(f) On July 6, 1927, a fifth amended petition was filed, in the caption of which the plaintiff is styled “ E. M. Obern- • dorfer as liquidator of L. Frank & Son Company.” This petition is made a part of this 'finding by reference. The defendant’s demurrer to this petition was overruled. The defendant’s several demurrers to the amended petitions are made parts of these additional findings by reference.
memorándum BT CHIEF JUSTICE CAMPBELL
The defendant did not request in its original requests the special findings involved in its last motion. The making of them now ,is perhaps in the discretion of the court. See Winton case, 255 U. S. 373, 395. They involve findings as to matters in the record. The claim asserted by the corpora *394 tion originally was well within the time allowed by the statute of limitations of six years. The amendment allowed the suit to be prosecuted by the liquidator of the dissolved corporation. The dissolution of the corporation gave a right to this liquidator or trustee to intervene and continue the suit in the interest of those entitled to the assets. See Thomas' case, 15 C. Cls. 335. It was there said, after a review of the cases (p. 346) : “All recognize the propriety of granting such an amendment as is now sought for, when it is necessary to the furtherance of justice.” “ There was, therefore, enough in the original petition to give the court jurisdiction of the parties and of the subject matter, and there is enough by which to amend.” Thomas’ case, supra, page 348. In Little's case, 19 C. Cls. 323, 330, the court refused to hold “ that the dead contractor’s representative shall be turned out of this court, * * * if any way can be found to avoid it without illegality.” See Buck's case, 25 C. Cls. 120, 122; American, Tobacco Company case, 166 U. S. 468. The material facts of this case are undisputed. The Government seeks to interpose a defense of a very technical nature that, as applied to the facts, is utterly unsound.
Moss, Judge; Grai-iam, Judge; and Booth, Judge, concur.
Green, Judge, took no part in the decision of this case.